IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**CLAUDIA S. GORAYEB,**

    Plaintiff,

v.                                                           Civil Action No. 2:11-CV-36
                                                              (BAILEY)

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge James E. Seibert [Doc. 18] and the defendant's Objections thereto [Doc. 19].  Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made.  However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived.  See **Webb v. Califano,** 468 F.Supp. 825 (E.D. Cal. 1979).  Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected.  The remaining portions of the R&R  will be reviewed for clear error.  As a result, it is the opinion of this Court that the R&R should be **ADOPTED**.

**Background**

On April 27, 2011, the plaintiff filed her Complaint [Doc. 1] seeking judicial review of an adverse decision by the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383 (c)(3). Pursuant to the Local Rules, this case was referred to Magistrate Judge Seibert for a recommended disposition. On August 12, 2011, and October 12, 2011, the plaintiff and the defendant filed their respective motions for summary judgment [Docs. 13 & 16]. In support of her motion, the plaintiff asserts three claims of error on the part of the Administrative Law Judge ("ALJ"). In his brief in support of the motion, the defendant responds to each claim and argues that the ALJ's decision is supported by substantial evidence.

First, the plaintiff asserts that the ALJ erred by failing to attribute proper weight to the opinions of the treating sources and improperly used his own lay opinion [Doc. 13 at 3-6]. Second, the plaintiff asserts that the ALJ erred by failing to have a medical expert at the hearing to provide testimony [*Id.* at 6]. Third, the plaintiff asserts that the ALJ erred by eliciting testimony from the vocational expert with an incomplete hypothetical [*Id.* at 7].

In response, the defendant argues that, with regard to the first alleged error, "the ALJ considered and properly weighed all of the medical evidence provided by Plaintiff's medical sources and the State agency psychologists" [Doc. 17 at 1]. With regard to the alleged second error, the defendant argues that medical expert testimony was not required at the hearing because the "record contained sufficient medical evidence of the severity and resulting functional limitations of [the Claimant's] impairment . . ." [*Id.*]. The defendant argues that, with regard to the third alleged error, "the hypothetical questions that the ALJ posed to the vocational expert at the hearing were supported by the overall medical

evidence in the record" [*Id.*]. As such, the defendant argues that the ALJ's decision is "supported by substantial evidence" and "should be affirmed" [*Id.*].

On October 24, 2011, Magistrate Judge Seibert recommended that the plaintiff's motion for summary judgment be denied and the defendant's motion for summary judgment be granted [Doc. 18 at 23]. With regard to the first alleged error, the magistrate judge concluded that the "[c]laimant has [not] identified which source is a 'treating source' [that] should have been given more weight" [*Id.* at 17], "the ALJ had good reason for not giving weight to the assessment completed by Mr. Stoll . . ." [*Id.* at 19], and the "ALJ was not substituting his opinion for those of others, [but] merely resolving a conflict in the evidence, as the law requires him to do" [*Id.*]. In addition, with regard to the second alleged error, the magistrate judge found that the "ALJ did not interpret the medical data himself, without an expert, but was relying upon the results and conclusions made by the State officials" [*Id.* at 20]. Furthermore, the magistrate judge concluded that, with regard to the third alleged error, the "ALJ did not pose any improper hypothetical to the [vocational expert]" and the "Claimant has failed to point to any specific limitation that was not included in the hypothetical to the vocational expert . . ." [*Id.* at 22]. The magistrate judge also found that the ALJ "explained why he was crediting the State Agency in deciding what limitations to include in the hypothetical" [*Id.*].

## Applicable Standards

### I. Judicial Review of an ALJ Decision

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42. U.S.C. § 405(g). "The findings . . . as to any fact, if

supported by substantial evidence, shall be conclusive." ***Richard v. Perales***, 402 U.S. 389, 390 (1971); ***Coffman v. Bowen***, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "'supported by substantial evidence'" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See **Perales***, 402 U.S. at 401 (*citing* ***Consolidated Edison Co. v. NLRB***, 305 U.S. 197, 229 (1938)). Substantial evidence "consists of more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance . . .." ***Laws v. Celebrezze***, 368 F.2d 640, 642 (4th Cir. 1966). Thus, "[i]t is not within the province of a reviewing court to determine the weight of the evidence; nor is it [the court's] function to substitute [its] judgment . . . if [the] decision is supported by substantial evidence." ***Id.*** (*citing* ***Snyder v. Ribicoff***, 307 F.2d 518, 520 (4th Cir. 1962)). Ultimately, it is the duty of the ALJ reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. ***King v. Califano***, 599 F.2d 597, 599 (4th Cir. 1979). "This Court does not find facts or try the case *de novo* when reviewing disability determinations." ***Id.***; *see also* ***Seacrist v. Weinberger***, 538 F.2d 1054, 1056-57 (4th Cir. 1976); ***Hays v. Sullivan***, 907 F.2d 1453, 1456 (4th Cir. 1990).

## II. Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

Step One: Determine whether the claimant is engaging in substantial gainful activity;

Step Two: Determine whether the claimant has a severe impairment;

Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

> Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and
>
> Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

See 20 C.F.R. § 404.1520(a)(4) (2011).

## Discussion

In her Objections [Doc. 18], timely filed on November 3, 2011, the plaintiff takes issue with the analysis of the magistrate judge. The Court will address these objections as they relate to each of the plaintiff's claims of error discussed above. In so doing, the Court will determine, *de novo*, whether any claim of error necessitates a finding that the ALJ's decision is not supported by substantial evidence.

### A. ALJ's Assignment of Weight to the Opinion of the Treating Physician and ALJ's Own Lay Opinion

#### 1. Assignment of Weight to the Opinion of the Treating Physician

In her motion, the plaintiff asserts that the ALJ failed to assign proper weight to the opinion of the treating physician [Doc. 13 at 3-4]. The magistrate judge rejected this assertion [Doc. 18 at 16-19]. The plaintiff objects to the magistrate judge's conclusion [Doc. 19 at 1-3]. The plaintiff argues that the "ALJ did not fully and fairly develop the [mental RFCs] provided by the State Agency psychologist" [*Id.* at 1-2]. The plaintiff further argues that the magistrate judge's "analysis of who exactly is [the plaintiff's] treating source is inconsistent and the record is not full and fairly developed on the issue as to why the ALJ did not give controlling weight to [the plaintiff's] treating sources" [*Id.* at 2–3]. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES**

5

the plaintiff's Objections insofar as they relate to the ALJ's consideration of the assignment of weight to the opinion of the treating physician.

In evaluating the opinions of treating sources, an ALJ must generally give more weight to the opinion of a treating physician because the physician is most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F.Supp. 53, 55 (W.D. Va. 1996); *see also* 20 C.F.R. § 404.1527(d)(2) and 20 C.F.R. § 416.927(d)(2).

If the ALJ determines that a treating physician's opinion should not be accorded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency between the opinion and the record as a whole, (5) whether the treatment source is opining within his or her specialization, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). In addition, the regulations state that the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." § 404.1527(d)(2). In this regard, Social Security Ruling 96-2p provides that those decisions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, *5 (1996).

The plaintiff argues that the "ALJ did not fully and fairly develop the mental RFCs (MRFCs) provided by the State Agency psychologist" [Doc. 19 at 1]. The plaintiff further argues that the magistrate judge's "analysis of who is [plaintiff's] treating source is inconsistent[,] and the record is not fully and fairly developed on the issue as to why the ALJ did not give controlling weight to [plaintiff's] treating sources" [*Id.* at 2-3]. The plaintiff states that the treating sources include various individuals at Northwood Health System ("Northwood") [*Id.*].

Among the individuals at Northwood who met with the plaintiff is Mr. Sean T. Stoll [Tr. 365-379]. Mr. Stoll has a bachelor's degree in traditional Chinese medicine and met with the plaintiff once [Tr. 378]. As such, the magistrate judge notes that he is not a specialist and did not have a long treatment relationship with the plaintiff [Doc. 18 at 18]. Mr. Stoll noted that the plaintiff has marked impairment in social, interpersonal, and family functioning [Tr. 376]. However, the ALJ noted that he "afford[ed] significant weight to the State Agency psychologists [because] they are consistent with the record as a whole" [Tr. 22]. One State Agency assessment indicates that it "seems that [plaintiff] would retain the mental-emotional capacity to perform simple unskilled work-related activities in a low demand/slow paced setting" [Tr. 273]. Another State Agency assessment indicated that the plaintiff "appears to retain sufficient mental capacity to perform simple 1-2 step routine and repetitive work-like activities in a low demand/pressure setting with limited expectations for social interactions with coworkers, supervisors or the general public" [Tr. 299]. These statements are consistent with Dr. Marilyn N. Brady, Ph.D., a psychologist who found that Plaintiff showed attention and concentration, had coherent thought processes, and could

function with extra effort [Tr. 281-82]. Dr. Brady is also among the "treating sources" at Northwood alleged by the plaintiff in her Objections [Doc. 19 at 2].

In this case, the plaintiff alleges that various individuals at Northwood are treating sources. Even if the ALJ were to accept the assumption that these individuals are treating sources, the ALJ is not required to give controlling weight to these sources where the ALJ finds that the physician's opinion is inconsistent with other substantial evidence. *See Ward*, 924 F.Supp. at 55; 20 C.F.R. § 404.1527(d)(2); and 20 C.F.R. § 416.927(d)(2). In this case, the ALJ considered the factors in 20 C.F.R. § 404.1527(d)(2)-(6) and provided reasons for weight given to the physicians' opinions pursuant to Social Security Ruling 96-2p. *See* Tr. 22. As such, this Court finds that the ALJ's assignment of weight of the opinions is supported by substantial evidence and hereby, **OVERRULES**, the plaintiff's objections on this point.

### 2. ALJ's Own Lay Opinion

In her motion, the plaintiff asserts that the ALJ improperly used his own lay opinion [Doc. 13 at 4-7]. The magistrate judge rejected this assertion [Doc. 18 at 19]. The plaintiff objects to the magistrate judge's conclusion [Doc. 19 at 3-4]. The plaintiff argues that the magistrate judge "incorrectly determined the ALJ was not substituting his own opinion for those of others" [*Id.* at 3] and "was 'merely resolving a conflict in the evidence as the law requires him to do'" [*Id.* at 4, *quoting* Doc. 18 at 19]. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's alleged use of his own lay opinion.

As stated above, section 404.1527 of the regulations governs an ALJ's consideration

8

of the medical opinion given by a treating source. See 20 C.F.R. § 404.1527(d). That regulation defines "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s), including . . . what [the claimant] can still do despite impairment(s) . . .." 20 C.F.R. § 404.1527(a)(2). The regulations further explain that "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. § 404.1513(a)(1)-(5). Finally, the regulations provide that a medical source statement about what a claimant can still do despite his or her impairment(s) should be "based on the acceptable medical source's findings" that are supported by a combination of medical history, clinical findings, laboratory findings, diagnoses, and prognoses. *See* § 404.1513(b); see also SSR 96-5p, 1996 WL 374183, *4 ("Medical source statements are medical opinions submitted by acceptable medical sources.") (citing § 404.1513(a) and 20 C.F.R. 416.913(a)).

The plaintiff argues that the magistrate judge "incorrectly determined [that] the ALJ was not substituting his own opinion for those of others" [Doc. 19 at 3] and "that the ALJ . . . was 'merely resolving a conflict in the evidence as the law requires him to do'" [Doc. 19 at 4, quoting Doc. 18 at 19]. The plaintiff argues that the "ALJ substitutes his own lay opinion determining the claimant immediately improved in April 2008, despite direct contradictory evidence [from] the state agency psychologist, claimant's treating psychiatrist and therapist, and without the support of substantial evidence" [Doc. 19 at 3].

On January 25, 2008, Jim Capage, Ph.D., conducted a psychiatric review of the plaintiff. *See* Tr. 257-70. He noted that the plaintiff's "impairments and their accompanying

9

functional limitations are severe" [Tr. 269]. However, he projected that the impairments "will not continue to meet the [l]istings for a year" and that the plaintiff would be capable of substantial gainful activity by November 2008 [*Id.*]. The plaintiff relies upon a notation by James Bartee, Ph.D., from a May 9, 2008, report as evidence contradicting the ALJ's conclusion that the plaintiff had improved in April 2008 [Doc. 19 at 3]. The May 9, 2008, report states that the plaintiff had no change in activities of daily living from the initial review [Tr. 313]. As such, the plaintiff argues that the ALJ substituted his own opinion for those of others [Doc. 19 at 3].

However, the plaintiff's argument overlooks the fact that evidence in the record supports the ALJ's conclusion. An April 17, 2008, report and a July 17, 2008, report state that the "patient is making progress" [Tr. 344 and 316]. Moreover, the April 17, 2008, report states that the plaintiff achieved a reduction in symptoms to a level of functioni[ng] that does not interfere with daily life" [Tr. 355]. As such, this Court finds that the ALJ did not substitute his own lay opinion for those of others when stating that the plaintiff improved in April 2008. Moreover, plaintiff's argument that the ALJ should have recontacted plaintiff's treating sources or sought the opinion of a medical expert under 20 C.F.R. §§ 404.1512(e) and 416.912(e) fails [*See* Doc. 19 at 4]. Sections 404.1512(e) and 416.912(e) are relevant only where " the evidence . . . is inadequate . . . to determine whether [the claimant is] disabled . . .." *See* 20 C.F.R. §§ 404.1512(e) and 416.912(e). Moreover, it addresses recontacting a medical source where there is a "conflict or ambiguity that must be resolved" within a report from that medical source, not when the record contains conflicting reports. *See id.* Therefore, this Court finds that consideration of the evidence is supported by substantial evidence and hereby, **OVERRULES**, the plaintiff's Objections insofar as they

relate to the ALJ's alleged use of his own lay opinion.

> **B.    ALJ's Failure to Have a Medical Expert at the Hearing to Provide Testimony**

Second, the plaintiff asserts that the ALJ erred by failing to have a medical expert at the hearing to provide testimony [Doc. 13 at 6]. The magistrate judge rejected this assertion [Doc. 18 at 19-21]. The plaintiff objects to the magistrate judge's conclusion [Doc. 19 at 4-6]. The plaintiff argues that the magistrate judge "incorrectly concluded that the ALJ did not err in failing to have a medical expert provide testimony at the hearing" [*Id.* at 4]. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's failure to have a medical expert at the hearing to provide testimony.

The Hearings, Appeals and Litigation Law Manual ("HALLEX") is a "manual in which the Associate Commissioner of Hearings and Appeals conveys guiding principles, procedural guidance and information to the Office of Hearings and Appeals (OHA) staff." *Melvin v. Astrue*, 602 F.Supp.2d 694, 699 (E.D. N.C. 2009). HALLEX I-2-5-34B states that an ALJ must obtain a medical examiner's opinion "to evaluate and interpret background medical test data." Under HALLEX I-2-5-14D, "[e]ven if background medical test data are not required, if a report raises a question about the accuracy of the medical test results reported . . ., the ALJ may ask the source to submit the background medical test data . . .. [I]nterpretation and evaluation of the background medical test data would require a medical expert."

The plaintiff argues that the magistrate judge "incorrectly concluded that the ALJ did not err in failing to have a medical expert provide testimony at the hearing" [Doc. 19 at 4-6].

The plaintiff argues that the magistrate judge did not evaluate her arguments under HALLEX I-2-5-34A, which provides circumstances under which an "ALJ may need to obtain [a medical expert's] opinion . . .." [*Id.* at 4]. The plaintiff argues that the "ALJ incorrectly resolved conflicts in the evidence himself using his lay opinion when he should have sought the opinion of a medical expert" as provided in HALLEX I-2-5-34A [*Id.* at 5] "to determine the continuing severity of claimant's impairments rather than relying on his own lay opinion" [*Id.* at 6].

However, the ALJ was not attempting to evaluate and interpret background medical test data in this case and, therefore, was not required to admit medical expert testimony. *See* HALLEX I-2-5-34B (2005). Moreover, the regulations do not contain a requirement for medical expert testimony at hearings and specifically state that the use of a medical expert is discretionary. *See* 20 C.F.R. §§ 404.1527(f)(iii) and 416.927(f)(iii). This Court finds that the ALJ was not required to obtain a medical expert opinion under HALLEX I-2-5-34B. Moreover, the plaintiff's arguments under HALLEX I-2-5-34A fails. HALLEX I-2-5-34A provides a list of situations in which an ALJ *may* need to obtain a medical expert opinion. HALLEX I-2-5-34A (2005)(*emphasis added*). Such medical expert opinion is discretionary unless it involves the "interpretation and evaluation of the background medical test data . . .." HALLEX I-2-5-14D. Because the ALJ was not interpreting and evaluating background medical test data, no medical expert opinion was required. As such, this Court finds that the ALJ's decision to not have a medical expert at the hearing is supported by substantial evidence and the plaintiff's objection on this issue is hereby **OVERRULED**.

### C. ALJ's Elicitation of Testimony From the Vocational Expert With an Incomplete Hypothetical

Finally, the plaintiff asserts that the ALJ erred by eliciting testimony from the vocational expert with an incomplete hypothetical [Doc. 13 at 7]. The magistrate judge rejected this assertion [Doc. 18 at 21-23]. The plaintiff objects to the magistrate judge's conclusion [Doc. 19 at 6-7]. The plaintiff argues that the magistrate judge "incorrectly concluded that the ALJ did not err in eliciting tesimony from the vocational expert with an incomplete hypothetical" [*Id.* at 6]. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's elicitation of testimony from the vocational expert with the use of hypothetical questions.

The regulations define a claimant's RFC as "the most [a claimant] can still do despite [his or her] limitations." *See* 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ will consider "all of the relevant medical and other evidence," such as "any statements about what [the claimant] can still do that have been provided by medical sources . . .." § 404.1545(a)(3). This includes statements about the claimant's ability to "perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . .." § 404.1545(b). Upon formulating a claimant's RFC, the ALJ must determine whether a significant number of jobs exist in the national economy that have requirements which the claimant is able to meet despite his or her RFC. *See* § 404.1566(b). In so determining, the ALJ may use the services of a vocational expert, who may offer expert testimony in response to a hypothetical question about whether a person with the claimant's RFC can meet the demands of his or her past

relevant work or other suitable work in the national economy. *See* §§ 404.1560(b)-(c) and 404.1566(e). Such a hypothetical question "must fairly set out all of the claimant's impairments, [but] need only reflect those impairments supported by the record. **Russell v. Barnhart**, 58 Fed. Appx. 25, 30 (4th Cir. 2003) (citing **Chrupcala v. Heckler**, 829 F.2d 1269, 1276 (3d Cir. 1987)). In addition, such a "hypothetical question may omit non-severe impairments, but [they] must include those that the ALJ finds to be severe. *Id.* (citing **Benenate v. Schweiker**, 719 F.2d 291, 292 (8th Cir. 1983)). Moreover, an ALJ has "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." **Koonce v. Apfel**, 166 F.3d 1209, *5 (4th Cir. 1999) (citing **Martinez v. Heckler**, 807 F.2d 771, 774 (9th Cir. 1986)).

The plaintiff argues that the magistrate judge "incorrectly concluded [that] the ALJ did not err in eliciting testimony from the vocational expert with an incomplete hypothetical" [Doc. 19 at 6-7]. The plaintiff argues that "the ALJ committed error by not using medical expert testimony when formulating his hypothetical" [*Id.* at 6] and "evaluat[ing] the continuing severity of claimant's impairments . . ." [*Id.* at 7].

In this case, the ALJ posed four hypothetical questions to the vocational expert. The first one involved a hypothetical person with the same age, education, and intelligence as the plaintiff; it also included a limitation of no high production rates and only simple, routine, one to three step tasks with minimal contact with the general public and occasional contact with co-workers and supervisors [Tr. 69-70].[1] The second one included the further

---

[1] The ALJ posed the following question to the Vocational Expert:
I want you to assume that the Claimant is not limited from an exertional

14

limitation of minimal contact with co-workers and supervisors as being defined as ten percent or less of the workday [Tr. 71-72].[2] The third one included the limitation of being off task two hours out of an eight hour workday [Tr. 72].[3] The fourth one included a further limitation of being absent from work three days a month due to impairments [Tr. 73].[4] None

---

standpoint, but would be limited to doing - - wouldn't be able to do jobs that would require high production rates such as assembly work or high sales quotas such as telemarketing sales, jobs that would be simple, routine, one to three step tasks and jobs that would require no more than minimal contact with the general public and occasional contact with co-workers and supervisors. Would there be any full-time, unskilled jobs such a hypothetical person could do in the local or national economy with those limitations?
[Tr. 69-70].

[2] The ALJ then posed the following hypothetical question to the Vocational Expert: I want you to assume a hypothetical individual the same age, education and work experience as the Claimant with no physical limitations, but be limited as I previously gave you, but with further limitation that the individual would only be able to have minimal contact with co-workers and supervisors, and again defining that as 10 percent or less of the workday. Would there be any full-time, unskilled jobs such a hypothetical person could do in the local or national economy with those limitations?
[Tr. 71-72].

[3] The ALJ asked the Vocational Expert the following hypothetical question: All right. I want you to assume a hypothetical individual the same age, education and work experience as the Claimant, wouldn't be limited from a physical standpoint, but due to the individual's impairments would be off task two hours out of an eight hour workday. Would there be any full-time, unskilled jobs such a hypothetical person could do in the local or national economy with those limitations?
[Tr. 72].

[4] The ALJ asked the Vocational Expert the following hypothetical question: The same question, different limitation. Due to the individual's impairments the individual wouldn't be limited exertionally, but would be absent from work three days a month due to the individual's impairments. Would there be any full-time, unskilled jobs such a hypothetical person could do in the local or national economy with those limitations?
[Tr. 72-73].

of the hypothetical questions were formulated with the assistance of a medical expert [Tr. 69-73].

Furthermore, when addressing the weight that he gave to the evidence, the ALJ stated that

> [t]he claimant's nearly immediate improvement after getting custody of her daughter in April 2008 with a return to part-time work, the stopping of medication and treatment within two to three months of getting custody, and a report of no symptoms at her last appointment, combined with the lack of treatment for nearly a year, her work activity, her use of alcohol, her conflicting statements as to when she last used cocaine, and her conflict with the law once again all serve to detract from the credibility of the claimant's statements.

[Tr. 22]. The ALJ also explained that he "afford[ed] significant weight to the opinions of the State Agency psychologists [because] they are consistent with the record as a whole" [Tr. 22].

As previously stated, this Court finds that the ALJ did not err in failing to admit expert medical testimony. As such, the ALJ was not required to use a medical expert when formulating his hypothetical questions to the vocation expert. *See* HALLEX I-2-5-14D and I-2-5-34A-B. Moreover, the ALJ properly supported his reasons for discrediting certain limitations and not presenting them to the vocation expert. As such, this Court finds that the ALJ's decision to pose hypothetical questions to the vocational expert without the assistance of a medical expert is supported by substantial evidence and hereby **OVERRULES** the plaintiff's objection on this issue.

## Conclusion

Upon careful consideration, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 18]** should be, and hereby is, **ADOPTED**. Further, the

plaintiff's Objections **[Doc. 19]** are **OVERRULED**. Therefore, this Court **ORDERS** that the defendant's Motion for Summary Judgment **[Doc. 16]** is hereby **GRANTED** and the plaintiff's Motion for Summary Judgment **[Doc. 13]** is hereby **DENIED**. Accordingly, this Court hereby **DENIES** and **DISMISSES** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** that this matter be **STRICKEN** from the active docket of this Court. The Clerk is directed to enter a separate judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: November 23, 2011.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE